## Dimond's Estate.

1. Where an heir agreed that a portion of his interest in real estate, which was about to be sold under proceedings in the Orphans' Court, should be applied to the payment of a debt for which another was his surety; but before the return of sale, he assigned to two others, to whom he was indebted, a portion of the proceeds of sale, after the payment of the former transfer, and in case the sale be set aside, then he transfers to them his right, title, and interest in the land, or money made by its sale, to the said amount: *Held*, that the second instrument was not a *conveyance* of the land, but a mere transfer of the land or money to the amout of the indebtedness; and that though the *first* sale *was set aside*, that still the second transferees took subject to the first agreement.

2. A judgment before a justice of the peace against the administrator of an heir to real estate, with notice by the summons, to his widow and the guardian of his children, which is not entered in the Common Pleas, is not a lien either on the land or the fund produced by its sale.

THIS was an appeal, by Basil Brownfield, Richard Poundstone, and James Barnes, from the order of the Orphans' Court of Fayette county, distributing the proceeds of the real estate of *Daniel Dimond, Sr.*, deceased, raised by a sale, under an order of the court, on proceedings in partition among the heirs and creditors of the deceased. Daniel Dimond died in 1830–1 or 2.

William Smiley, a grandson of the deceased, was entitled to a portion of the proceeds, in right of his mother, and he assigned to Horatio Griffith, as a security for liabilities incurred for him, $300 of the money raised by. the sale. He also, by his deed, conveyed to Brownfield & Poundstone, $281.25 of the proceeds of the sale, subject to the previous assignment or order to Griffith, in case the *then sale* should be confirmed, but if it should be set aside by the court, then he transfers to Brownfield & Poundstone, absolutely, his interest in the land of his deceased grandfather to the amount of their claim, which deed was duly recorded before the sale. The first sale was set aside by the court, and another sale made, which increased considerably the amount to be distributed; and the interest of William Smiley in the estate not producing sufficient to satisfy both claims, the question was, which was to be preferred, Griffith's, or Brownfield & Poundstone's. For dates of assignment, see *postea*. The sale of the property was between the 14th Dec., 1847, and 22d March, 1848.

James Barnes also appeals—he is a creditor of *Henry* Dimond, deceased, *who was a son and heir at law* of Daniel Dimond, deceased. Mr. Barnes claims the amount of a judgment obtained before a justice of the peace against the administrator and heirs of the said Henry Dimond, deceased, Jan. 29, 1839, and which was suffered to lie until the distribution of the estate in this case. Henry Dimond had no estate but his interest in the land of his father, Daniel Dimond, Sr., and that was subject to the life estate of his mother, who died but a few years since. A question was,

[Dimond's Estate.]

whether James Barnes should be paid the amount of his judgment against the administrators of Henry Dimond, since his estate was in course of distribution amongst his heirs and creditors.

### ASSIGNMENT TO HORATIO GRIFFITH.

Horatio Griffith having become security in a note with myself and Hugh H. Dearman, to William Mosier, for three hundred dollars, dated about the month of May or June last, and being desirous to secure the said Griffith, I do hereby agree that my interest in the money arising from the sale of the real estate of Daniel Dimond deceased, shall be bound for the same, and I do hereby direct and authorize Sheriff Frost to retain in his hands my interest, as aforesaid, or so much of the money coming to me as shall be sufficient to pay the said note and interest thereon, until the said note shall be paid as aforesaid, or the said Griffith shall be released from all liability for the same. And in case the said Griffith shall pay off the said note, then this shall be his authority to receive the amount so paid, from the said Sheriff Frost, out of the proceeds of sale as aforesaid, and the said Frost shall not pay over the said interest or money to me, until I shall produce evidence of the payment of the note to said Mosier, or that he, the said Griffith, has been released from the same. Nov. 29, 1487.

Test—*J. B. Miller.*            WILLIAM SMILEY.

### ASSIGNMENT TO BROWNFIELD & POUNDSTONE.

For value received of Basil Brownfield and Richard Poundstone, to wit : one hundred and thirty-one dollars and twenty-five cents of B. Brownfield, and one hundred and fifty dollars of said Poundstone—for which they hold my notes and Hugh Dearman's, the whole sum of two hundred and eighty-one dollars and twenty-five cents—I do hereby assign and transfer to the said Basil Brownfield and Richard Poundstone, two hundred and eighty-one dollars and twenty-five cents of the money arising from the sale of the real estate of Daniel Dimond, Sr., deceased, by the trustee, Westley Frost, Esq., to come out of my share of the same as one of the grand-children of said Daniel Dimond, deceased—after the payment, however, of three hundred dollars heretofore assigned to Horatio Griffith, of the same fund. And in case said sale should be set aside, then I do hereby transfer to them, their heirs or assigns, my right, title, and interest in the land, or money made by the sale thereof, to the said amount. Witness my hand and seal, Dec. 4, 1847.

Attest—*J. H. Deford.*            WILLIAM SMILEY, [L. S.]

The judgment of James Barnes was against the administrator of Henry Dimond, deceased, with notice to the widow and children of deceased, by their guardian. Jan. 29, 1839, judgment for $30.12. Defendants appeal from the judgment.

[Dimond's Estate.]

Inquisition for valuation or partition awarded in March, 1847. June 10, 1847, inquisition and appraisements returned, and confirmed, and rule upon heirs. Sept. 18, 1847, sheriff appointed trustee to sell. Dec. 14, 1847, sale returned, set aside, and new order to sell granted. March 22, 1848, report of sale, and sale confirmed, and auditor appointed to distribute proceeds to heirs and legatees. June 10, 1848, report filed. The auditor made a conditional report, depending on the decision of questions of law. To the report of the auditor as to the judgment of Barnes, it was excepted that the judgment was no lien upon the fund in court. The exception was sustained on the ground, that the judgment, being before a justice of the peace, was not made a lien of record, within seven years after the decease of the intestate, which discharged the land sold from the lien of the same.

The court decided that the assignment to Poundstone & Brownfield was to be *postponed* to the assignment to Griffith.

It was assigned for error, that the court erred in giving preference to the assignment of Horatio Griffith, rather than to the deed of Brownfield & Poundstone.

The court erred in rejecting the claim of James Barnes, and refusing to allow its payment out of the share of Henry Dimond's heirs.

The case was argued by *J. H. Deford*, for appellants.—He contended that the instrument in favor of Griffith was merely an order, which he could countermand, and which he did by his deed. That it was conditional that he pay a note, of the payment of which there was no evidence. That the judgment against Henry Dimond was a lien or charge on his estate, as against his heirs, who were notified: 3 *Barr* 352; 4th sec. of act of 4th April, 1797.

*J. Miller*, for appellee.—That the order in favor of Griffith was valid, so as to require the money to be retained till proof of payment of the note. That the note has been paid. That the judgment of Barnes was never entered in the Common Pleas. That a *summons* before a justice is not equivalent to a *scire facias* in court.

The opinion of the court was delivered by

COULTER, J.—It was evidently the intent of the parties to the assignment of Smiley to Brownfield & Poundstone that they, to wit, the latter, should participate in the fund, subject to the interest in the same fund previously assigned to Horatio Griffith. That being the clear understanding and contract of the parties, no court ought to violate it, or give a contrary direction to the fund. That the first sale might be set aside, was within the legal and actual category of such affairs, and the stipulation in the assignment that

2 C

if it was, still Poundstone & Brownfield should get the amount assigned out of the second sale, was nothing more than what the law would have awarded to them without that stipulation. And for the same reason, the first assignment to Griffith continued good, notwithstanding the first sale was set aside, because so much of the fund was so devoted, and so applied by the owner of it, for a good and valuable consideration. The property was to be sold and converted into money, to answer the exigencies of the law; and whenever it was converted into money, then the assignments were entitled to their respective shares, according to the intent of the parties; and if the first assignment took up the whole fund, there remained nothing for the second. It is a total mistake to call the assignment to Brownfield & Poundstone a deed for the land; it is a mere transfer, in case the first sale should be set aside, of the land *or* money made thereout, to the amount of the order; and that order was expressly subject to Griffiths' assignment. The land was in *gremio legis.* It was in legal process of mutation; and the clear intent was to transfer money, not land.

The second error assigned is of no account. The judgment against Henry Dimond's heirs was no lien, either on the land or the fund produced by its sale. The authorities are so full and explicit on this point, that it is not necessary to say more.

Judgment affirmed.